IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| MILTON L. KIRK, JR., <br> a/k/a MELTON L. KIRK, <br><br> Petitioner, <br><br> v. <br><br> JONATHAN LEBO, <br><br> Respondent. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:15-cv-01101-STA-egb <br> ) <br> ) <br> ) <br> ) |

ORDER DIRECTING CLERK TO MODIFY RESPONDENT,
DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

On April 30, 2015, Petitioner, Milton L. Kirk, Jr., a Tennessee state prisoner, filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254 ("Petition").[1] (ECF No. 1.) For the reasons that follow, the Petition is **DENIED**.

**BACKGROUND**

The following background summary is drawn from the state court record (ECF No. 22), and the decision in Kirk's state post-conviction appeal. *See Kirk v. State*, No. W2013-00544-CCA-R3-PC, 2014 WL 12651042, at *1 (Tenn. Crim. App. July 29, 2014).

**1. Trial and Guilty Pleas**

Petitioner's federal habeas claims arise from Kirk's three Tennessee criminal cases.

---

[1] The Tennessee Felony Offender website shows Petitioner's name as Melton L. Kirk.

1

*Case 1*

In 2009, Kirk was indicted by the Dyer County, Tennessee, grand jury of one count of the sale of 0.50 grams or more of cocaine and one count of the sale of 0.50 grams or more of cocaine in a drug-free zone ("Case 1"). (ECF No. 22-4 at 5.) In 2011, "[t]he two charges . . . were tried separately, with the charge for sale of cocaine in a school zone resulting in a hung jury." *Kirk*, 2014 WL 12651042, at * 4.

At the jury trial on the sale of cocaine charge, Sergeant Todd Thayer of the Dysersburg Police Department testified that, on March 10, 2009, with the help of confidential informant Brenda McElroy, he coordinated a controlled buy of cocaine from Petitioner. The purchase was captured on video, which was played for the jury. McElroy took the stand and described the transaction. A special agent with the Tennessee Bureau of Investigation ("TBI") testified that the substance the defendant sold to McElroy contained cocaine base. *Id.* at *1-2. An investigator who served as an evidence custodian testified that he searched McElroy's vehicle before and after the purchase and "retrieved the sealed evidence envelope . . . and transported it to the TBI." *Id.* at *2.

After the jury returned a guilty verdict on the charge of selling cocaine, the trial court sentenced Kirk to twelve years' imprisonment. (ECF No. 22-2.) *See also Kirk*, 2014 WL 12651042, at *2.

*Cases 2 and 3*

In 2010, Petitioner was charged with tampering with evidence, resisting arrest, and evading arrest ("Case 2"). The offenses occurred on December 9, 2009, while Kirk was out on bond in Case 1. (ECF No. 22-4 at 7-8.) *See also Kirk*, 2014 WL 12651042, at *2.

On that day, a Dyersburg police officer stopped a truck in which Kirk was a passenger. As the officer's canine unit walked around the vehicle, "one of the other officers pointed out that [the Petitioner] appeared to have a bulge in his mouth." *Id.* at *2 (alterations in original). When questioned, Kirk said he had an abscessed tooth. When the officer looked into his mouth, however, he observed "what appeared to be a small baggie of cocaine." *Id.* Petitioner then fled the scene. When he was taken into custody he no longer had the baggie, and he insisted that it had contained marijuana, not cocaine. *Id.*

In 2011, Petitioner was indicted for possessing less than 0.50 grams of cocaine with intent to sell on August 12, 2009 ("Case 3"). (ECF No. 22-4 at 9.) The cocaine was discovered in Kirk's shoe during a search incident to his arrest on the charges in Case 1. *Kirk*, 2014 WL 12651042, at *2. With him at that time of his arrest "was Amber Henson, the mother of [his] child." *Id.* at *8. Ms. Henson was found to have "secreted drugs in her vagina." *Id.*

Petitioner learned of the indictment in case 3 one day before his scheduled trial in case 2. "[A]pproximately thirty minutes" after being informed of the indictment, Petitioner entered a guilty plea in Case 2 on the tampering with evidence charge, and a guilty plea on the sole count of the indictment in Case 3. *Id.* In exchange for Kirk's guilty pleas and a waiver of his appeal rights, the government nolle prossed the charge of sale of cocaine in a drug-free zone in Case 1 and the Case 2 charges of resisting and evading arrest. *Id.* at *2.

As a result of his guilty pleas, Petitioner was sentenced as a Range I offender, rather than a Range II offender. (ECF No. 22-3 at 4; ECF No. 22-4 at 11.) He received a sentence of "four years [of incarceration] for his tampering with evidence conviction and six years for his possession with intent to sell or deliver cocaine conviction." *Kirk*, 2014 WL 12651042, at *2. (*See also* ECF No. 22-4 at 11, 12, 16.) The "tampering with evidence [sentence] was to run

3

consecutively to his sale of cocaine [sentence] but concurrently to his possession [sentence], . . . for a total effective sentence of sixteen years." *Kirk*, 2014 WL 12651042, at *2.

## 2. Post-conviction Proceedings

Kirk filed a state *pro se* post-conviction petition for each of his three cases. (ECF No. 22-4 at 17-39.) The post-conviction proceedings were consolidated, and appointed counsel filed an amended petition. (*Id.* at 47-48). The court held an evidentiary hearing on Petitioner's numerous claims, at which Petitioner and his trial counsel testified. (ECF No. 22-5.) The court denied relief, finding that Petitioner's testimony regarding his attorney's conduct was not credible, and concluding that counsel had not provided ineffective assistance. (ECF No. 22-4 at 62-67.)

On appeal, Kirk raised the claims that his guilty pleas in Cases 2 and 3 were not voluntary and knowing due to time constraints and the actions of his trial counsel, and that counsel rendered ineffective assistance by failing to give him discovery materials and to communicate with him. (ECF No. 22-8 at 4, 9-10). *See also Kirk,* 2014 WL 12651042*, at* *1, 7, 8. The TCCA affirmed the lower court's decision, *id.* at *9, and the Tennessee Supreme Court denied Petitioner's application for permission to appeal, (ECF No. 12-13).

## 3. Federal Habeas Petition

In 2015, Kirk filed his federal habeas Petition. He subsequently indicated that he would file an amended petition, (*see* ECF Nos. 18, 19, and 21), but he did not do so.

The Petition asserts the following claims:

**Claim 1:** Trial counsel was ineffective by failing to provide Petitioner with discovery in Case 1. (ECF No. 1 at 11, 19.)

**Claim 2:** Petitioner's guilty pleas in Cases 2 and 3 were involuntary because he had little time to consider the government's plea offer and because his attorney

4

failed to provide him with discovery in those cases and to communicate adequately with him. (*Id.* at 5, 32.)

**Claim 3:** Petitioner's trial counsel was ineffective in the plea context in Cases 2 and 3 by failing to provide Petitioner with discovery in those cases and communicate adequately with him. (*Id.* at 17, 31, 72.)

**Claim 4:** Petitioner did not knowingly waive his appellate rights because, due to time constraints and counsel's ineffective assistance, he "did not understand the nature and consequences of waiving [his] right to a direct appeal." (*Id.* at 5, 17, 32.)

**Claim 5**: Trial counsel was ineffective by failing to ensure that Petitioner understood the nature and consequences of his waiver of direct appellate rights. (*Id.* at 5, 17, 32.)

**Claim 6:** Trial counsel was ineffective by not allowing Petitioner to assist in jury selection in Case 1. (*Id.* at 5.)

**Claim 7**: The State failed to provide Petitioner with complete discovery materials. (*Id.* at 7, 19.)

**Claim 8:** The trial court was ineffective by failing to answer Petitioner's motion for a new trial in Case 1. (*Id.* at 11.)

**Claim 9**: Trial counsel was ineffective by failing to file motions to suppress in Cases 1 and 2. (*Id.* at 11, 16, 19.)

**Claim 10**: The prosecution presented insufficient evidence to convict Petitioner of a Class B felony in Case 1 and to establish his guilt in Cases 2 and 3. (*Id.* at 11, 16, 17, 19.)

**Claim 11:** Trial counsel was ineffective by failing to call witnesses in Case 1. (*Id.* at 11.)

**Claim 12**: Petitioner's constitutional rights were violated because the confidential informant used in Case 1 was not a licensed informant. (*Id.* at 11.)

**Claim 13:** Petitioner's due process rights were violated when he was subjected to a "false report and false conviction" in Case 2. (*Id.* at 16, 19, 72.)

**Claim 14**: Petitioner was not read his Miranda rights in Case 2. (*Id.* at 5, 16, 19.)

**Claim 15:** A procedural error in Case 3 violated Petitioner's due process rights. (*Id.* at 31.)

**Claim 16**: Cumulative errors in all three cases violated Petitioner's due process rights. (*Id.* at 17.) [2]

## DISCUSSION

Respondent, Jonathan Lebo,[3] filed the state-court record and an answer to the Petition. (ECF Nos. 22 and 23.) He argues that most of Petitioner's claims are procedurally defaulted, and that the remaining claims are without merit. Petitioner did not respond to the government's arguments, although allowed to do so, (*see* ECF No. at 9 at 4).

1. **Legal Standards**

   A. **Habeas Review and Procedural Default**

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorisim and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state-court decision "was contrary to federal law then clearly established in the holdings of [the Supreme] Court; involved an unreasonable application of such law; or was based on an unreasonable determination of the facts in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (citing 28

---

[2] The Court has renumbered and restated the claims in an effort to liberally construe the Petition and to lend organization and clarity to the issues presented. The renumbering overlaps with, but is not identical to, the renumbering undertaken by Respondent.

[3] The clerk is **DIRECTED** to substitute Jonathan Lebo for Blair Leibach as Respondent. *See* Fed. R. Civ. P. 25(d).

U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (internal quotation marks and citations omitted).

A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams*, 529 U.S. at 405. An "unreasonable application" of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies" that principle "to the facts of a prisoner's case." *Id.*

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion . . . ." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citing *Williams*, 529 U.S. at 411). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are rebutted by clear and convincing evidence and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

7

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

Only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law," or demonstrates that "the court's failure to consider the claim[] will result in a fundamental miscarriage of justice," will he be entitled to federal court review of the merits of a claim that was procedurally defaulted. *Id.* at 750. The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 9 (2012)); *see also Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013).

**B. Ineffective Assistance of Counsel**

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v.*

8

*Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a movant must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)) (internal quotation marks omitted).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687, 693).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable

9

> applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105 (internal quotation marks and citations omitted).

**C. Involuntary Plea**

Under the Supreme Court's decisions in *Boykin v. Alabama*, 395 U.S. 238 (1969), and *Brady v. United States,* 397 U.S. 742 (1970), "[a] guilty plea is valid only if the defendant knowingly, intelligently and voluntarily waives the many constitutional rights associated with a criminal trial, and has sufficient awareness of the relevant circumstances and likely consequences of the plea." *United States v. Taylor*, 281 F. App'x 467, 469 (6th Cir. 2008) (citing *Boykin*, 395 U.S. at 243; *Brady,* 397 U.S. at 748) (internal quotation marks and citations omitted). The defendant must, "'[a]t a minimum, . . . understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty." *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004) (quoting *Bousley v. United States*, 523 U.S. 614, 618-19 (1998)). "The satisfaction of these requirements cannot be inferred from the bare fact that the defendant pleaded guilty, because he still might not have known what he was giving up when he did so." *Ruelas v. Wolfenbarger*, 580 F. 3d 403, 409 (6th Cir. 2009) (citing *Boykin*, 395 U.S. at 243).

*Strickland*'s two-pronged test applies where a defendant alleges that his guilty plea was not knowing and voluntary due to the ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985). To establish prejudice in the plea context, a petitioner must show that if his counsel had not performed deficiently, there is a "reasonable probability" that he would not have pleaded guilty but instead would have proceeded to trial. *Id.* at 59. The reasonable probability test is objective, not subjective; the petitioner "must convince the court that a decision to reject

the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

2. **Procedurally Defaulted Claims: Claims 4 Through 16**

The Petition alleges that Kirk's trial attorney rendered ineffective assistance in numerous respects in all three of his cases (Claims 5, 6, 8, 9, 11); that his waiver of his appellate rights was involuntary (Claim 4); that his arrest in Case 2 and errors in the state proceedings deprived him of his constitutional rights (Claims 12-16); that the State withheld discovery (Claim 7); and that the evidence against him was legally insufficient in all three of his cases (Claim 10). Respondent argues that these claims are procedurally defaulted. Petitioner has not responded to the argument.

Although some of these claims were litigated at the initial post-conviction proceeding, (*see e.g.*, ECF No. 22-4 at 20, 28, 36; ECF No. 22-5 at 30-31, 119-21), none of them were raised on appeal from the denial of post-conviction relief. The claims are therefore procedurally defaulted.

Petitioner does not assert cause for the defaults, or allege that he is actually innocent of the crimes for which he was convicted. The defaults are therefore unexcused.

Because Claims 4 through 16 are not reviewable in this federal habeas proceeding, they are **DISMISSED**.

3. **Claim 1**

Petitioner asserts that his attorney was ineffective by failing to provide him with the State's discovery prior to trial in Case 1. He raised the claim in his post-conviction appeal and the TCCA rejected it. *See Kirk*, 2014 WL 12651042, at *7-8. It is unclear from the Petition whether Kirk contends that the decision of the TCCA on Claim 1 is contrary to clearly

established federal law, involves an unreasonable application of such law, or is based on an unreasonable factual determination. *See* 28 U.S.C. § 2254(d). Nevertheless, a review of the TCCA's decision and the state court record reveals that Petitioner has no viable argument under any of these standards.

In rejecting Petitioner's claim, the TCCA expressly invoked *Strickland*'s two-part test. *Kirk*, 2014 WL 12651042, at *6. Upon review of the post-conviction testimony, the court concluded that counsel had not performed deficiently because he had, in fact, reviewed the discovery materials with his client. *Id.* at *8. The court noted that counsel testified that he reviewed the video tape of the controlled buy with his client prior to trial, and that it was his practice to share discovery with his clients. The appellate court refused to disturb the post-conviction trial court's determination that counsel's testimony was credible. *Id.* The court also cited Kirk's admission on cross-examination that he had watched the video of the controlled buy with his attorney prior to trial. *Id.* at *7.

The TCCA's ineffective-assistance determination is not contrary to clearly established Supreme Court law because the court applied *Strickland*'s standards to the facts before it. "A run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The decision is also not based on an unreasonable determination of the facts. The post-conviction court's credibility determination, which the TCCA refused to disturb, is entitled to deference by this Court in the absence of clear and convincing contrary evidence in the record. *Fargo v. Phillips*, 58 F. App'x 603, 607 (6th Cir. 2003) (holding "state court's determination that counsel's testimony was more credible than the witnesses' testimony was not unreasonable"

12

where there was "no clear and convincing evidence to justify a rejection of the trial court's credibility finding.") (citing 28 U.S.C. § 2254(e)(1)); *see also generally Rice v. Collins*, 546 U.S. 333, 342 (2006) ("Reasonable minds reviewing the record might disagree about [a witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination."). Kirk has not pointed to any clear and convincing evidence in the record that undermines the post-conviction court's determination that counsel was a credible witness.

Since counsel had credibly testified that he shared the State's discovery in Case 1 with Petitioner, the TCCA's conclusion that counsel had not performed deficiently is patently reasonable. Petitioner therefore has not established that the TCCA's rejection of his claim was based on an unreasonable application of *Strickland*'s standards to the facts.

Claim 3 is therefore **DENIED**.

**4. Claims 2 and 3**

In Claim 2, Petitioner asserts that his guilty pleas in Cases 2 and 3 were not voluntary and knowing because he was not given enough time to consider the State's plea offer and because counsel failed to provide him with discovery in those cases and to communicate adequately with him. Relatedly, in Claim 3 he argues that counsel provided ineffective assistance in the plea context by failing to provide him with discovery and to communicate adequately with him. These claims were raised and litigated on appeal, and the TCCA rejected them. (ECF No. 22-8 at 4, 9-10.) *See also Kirk*, 2014 WL 12651042, at *8.

Petitioner does not specify whether he believes that the TCCA's rulings on the issues in Claims 2 and 3 are contrary to clearly established federal law, involve unreasonable applications of such law, or are based on unreasonable factual determinations. *See* 28 U.S.C. § 2254(d). The Court nevertheless determines that the TCCA's holdings survive all three tests.

13

In addressing Petitioner's ineffective-assistance claim, the TCCA expressly invoked *Strickland* and *Hill*, and applied the standards announced in those cases. *Kirk*, 2014 WL 12651042, at *7. "Looking first to the prejudice prong," the court concluded that Petitioner had "failed to establish that, but for any of the alleged deficiencies of trial counsel, he would have proceeded to trial on his indicted charges." *Id.* at *8.

The court found that "Petitioner's motivations for his plea appear to have been based on knowledge of a new indicted charge and fear of the mother of his child receiving jail time." *Id.* The court relied on Petitioner's own testimony that, upon learning of the indictment in Case 3, "he 'couldn't take no [sic] more' and entered into his guilty pleas approximately thirty minutes later." *Id.* (alteration in original). Kirk conceded that "had he not received the new indictment in Case 3, he . . . would have insisted on going to trial [in Case 2] the following day." *Id.* The appellate court also noted trial counsel's testimony that his client's "'main concern, his overriding concern'" in pleading guilty in Cases 2 and 3 "'was that Ms. Henson not be convicted.'" *Id.* According to counsel, "'as a part of the bargain, [the State] agreed to dismiss the cocaine case against Ms. Henson in exchange for [the Petitioner's] plea.'" *Id.* (alternation in original.) Petitioner himself also testified that he had been concerned that Henson would be incarcerated. *Id.*

In addressing Kirk's challenge to the voluntariness of his guilty plea, the appellate court expressly invoked the standards announced in *Boykin*, 395 U.S. at 242-43, and applied them to the facts. *Id.* The court "reviewed the transcript of the guilty plea hearing" for indications of Petitioner's understanding of the rights he was waiving and the consequences of his pleas:

> At the hearing, the Petitioner acknowledged that he understood: the nature of the charges for which he was pleading guilty and the potential sentencing ranges; his right to representation by counsel at trial; his right to a jury trial, in which he could cross-examine the State's witnesses and he could but would not be forced to

14

> testify; his right to an appeal; and that these felony convictions could be used against the Petitioner in future proceedings to enhance his sentence in a future felony case.

*Id.* at *9.

The TCCA further noted that Petitioner "denied that anyone threatened him or that anyone promised him anything other than what was included in the plea agreement." *Id.* "When asked why he was pleading guilty, the Petitioner responded that he wished to avoid a life sentence." *Id.*

On that record, the TCCA found that Petitioner understood the terms of his negotiated plea agreement and knowingly and voluntarily pleaded guilty. *Id.* It therefore "conclude[d] that the Petitioner's plea was constitutionally sound." *Id.*

Kirk has not established that the TCCA's determinations were contrary to controlling Supreme Court precedent. As noted, the court cited and applied the correct legal rules from *Strickland*, *Hill*, and *Boykin*. *See Williams*, 529 U.S. at 406.

Petitioner also has not established that the TCCA's conclusion that counsel was not ineffective at the plea stage was based on objectively unreasonable factual determinations or an unreasonable application of the governing legal standards to the facts. The TCCA relied on Kirk's own admissions that he pled guilty based on his knowledge of a new indictment and that he was concerned about the mother of his child going to prison. Moreover, Petitioner has not offered clear and convincing proof to undermine the state court's determination that counsel's testimony, which included his explanation of his client's motivations in pleading guilty, was credible. *See Fargo*, 58 F. App'x at 607. In light of this record, the TCCA did not unreasonably conclude that any defect in counsel's performance did not prejudice Kirk.

15

Petitioner likewise fails to show that the TCCA's holding that his guilty pleas were knowing and voluntary is based on unreasonable factual determinations or an unreasonable application of law to the facts. As the TCCA found, Kirk's testimony at his guilty plea hearing undermines his allegation that he did not voluntarily and knowing plead guilty. The sentencing judge reviewed the charges and the sentencing ranges (ECF No. 22-3 at 10-11), the rights Kirk was waiving by pleading guilty (*id.* at 9-10, 11, 13, 18), and the fact that he was agreeing to an effective sentence of sixteen years (*id.* at 5, 9.) Moreover, Petitioner testified, unequivocally, that nobody was making him plead guilty and he was doing it of his own free will. (*Id.* at 17.) On this record, the TCCA did not unreasonably conclude that the guilty pleas were knowing and voluntary.

Petitioner has therefore not shown that the TCCA's determinations fail AEDPA review. Claims 2 and 3 are therefore **DENIED**.

For all of these reasons, the Petition is **DENIED**. Judgment shall be **ENTERED** for Respondent.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural

grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reasons it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.

**IT IS SO ORDERED**.

                                               **s/ S. Thomas Anderson**
                                               S. THOMAS ANDERSON
                                               CHIEF UNITED STATES DISTRICT JUDGE

                                               Date: June 13, 2018